## KILBOURN *v.* SUNDERLAND.

## SUNDERLAND *v.* KILBOURN.

## SUNDERLAND *v.* KILBOURN.

APPEALS FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Nos. 188, 261, 262. Argued March 7, 8, 1889. — Decided April 22, 1889.

Where it is competent for a court of equity to grant the relief asked for, and it has jurisdiction of the subject matter, the objection that the complainant has an adequate remedy at law should be taken at the earliest opportunity, and before the defendants enter upon a full defence. *Reynes* v. *Dumont*, 130 U. S. 354, followed.

Equity jurisdiction may be invoked, although there is also a remedy at law, unless the remedy at law, both in respect of the final relief and the mode of obtaining it is as efficient as the remedy which equity could confer under the same circumstances.

When a charge of fraud involves the consideration of principles applicable to fiduciary and trust relations, equity has jurisdiction over it, as "fraud" has a more extensive signification in equity than it has at law.

When a party injured by fraud is in ignorance of its existence, the duty to commence proceedings arises only upon its discovery; and mere submission to any injury after the act inflicting it is completed cannot generally, and in the absence of other circumstances, take away a right of action, unless such acquiescence continues for the period limited by the statute for the enforcement of the right.

On the facts it is held that Stewart was not an indispensable party to this suit, and that the plaintiffs are entitled to a portion of the relief prayed for.

THE court, in its opinion, stated the case as follows:

In 1872, Thomas Sunderland, Curtis J. Hillyer and William M. Stewart associated themselves for the purchase and sale of

real estate in the city of Washington by way of investment and speculation. Hallet Kilbourn, James M. Latta and John F. Olmstead were carrying on business at that time in Washington as real estate agents, in partnership, under the firm name of Kilbourn & Latta, and they were employed as their agents by Sunderland, Hillyer and Stewart.

Within a period of a few weeks Sunderland, Hillyer and Stewart had purchased property through Kilbourn & Latta at a cost of several hundred thousand dollars. Sunderland's interest in the purchases was one half, Hillyer's one quarter, and Stewart's one quarter; and soon afterwards and in the same year, Stewart sold out his interest to Sunderland. In addition to these joint purchases, Sunderland purchased for himself in the same way to a large amount.

Two suits in equity in reference to the dealings between the parties had been commenced in the Circuit Court of the United States for the District of Indiana, against Latta alone, and as a partner of Kilbourn & Latta, one on behalf of Sunderland and Hillyer and the other on behalf of Sunderland alone, in which process was served on Latta but not on Kilbourn or Olmstead. Subsequently the original bill in this cause was filed in the Supreme Court of the District of Columbia and a stipulation was entered into whereby the subject matter of the causes in Indiana was transferred to the litigation here, and, by amendments made in pursuance of the stipulation, all the controversies were consolidated into this suit, the bill as amended seeking relief in favor of Hillyer and Sunderland as against Kilbourn, Latta and Olmstead, and as against Latta alone and in favor of Sunderland as against the three and also as against Latta individually. And the answers of Kilbourn and Olmstead, and the several answers of Latta, put in issue all the causes of action respectively. The original bill was filed June 9, 1881, and the amendments March 22, 1882. During the proceedings Stewart, who had not been made a party in terms, entered his appearance and filed a disclaimer. The original bill and amendments alleged an arrangement between Sunderland, Hillyer and Stewart for the purchase of real estate, and charged that Kilbourn & Latta were employed

as the agents of complainants and Stewart to make for them the proposed purchases under an agreement set out by the complainants as follows:

"That the. plaintiffs and the said Stewart should entrust unto said firm as their agents aforesaid the negotiation for and the purchase of such real estate in the said quarter of the said city as the plaintiffs and the said Stewart might elect to acquire; that they should furnish unto the said firm, when. by the same thereunto required, such sums of money as might be requisite for the acquisition of the property, and that the plaintiffs and the said Stewart should pay unto the said firm, upon the purchases to be made by said firm on their account, a reasonable compensation, by way of commission, when and in case the said firm should make no charge by way of commission against the vendors of the property, but in case any. such charge should be made by the said firm against the vendors, that then the plaintiffs and the. said Stewart should pay unto the said firm - no commission whatever; that the said firm, in consideration of so being entrusted with the purchase of such real estate and of the commissions which it might derive upon such purchases, should ascertain and point out unto the plaintiffs and the said Stewart such lots and parcels of land, in the said section of the said city, as in the judgment of the said firm might be most advantageously acquired by the plaintiffs and the said Stewart; that the said firm should advise and counsel, to the best of its judgment, knowledge and experience, the plaintiffs and the said Stewart in respect of the purchase of any particular parcel of land within the said section which they, on their own motion, might suggest to the said firm as desirable to be purchased on their account, and that in any and all cases the said firm should negotiate for the purchase of any real property to be acquired on account of the plaintiffs and the said Stewart at the lowest possible rate at which it could be obtained from the owner, and after ascertaining the price at which any such property might be obtained from the owner, should fairly and to the best of the knowledge and ability of the said firm inform the plaintiffs and the said Stewart whether the said price was such as to render their ac

quisition of the property desirable, and recommend to them
whether they should purchase the property or not; that if the
plaintiffs and the said Stewart consented to such purchase, the
same should be made on their account by the said firm, and that
upon receiving at its request from the purchasers the cash required
in the first instance, and also the amount of deferred
payments as the same might become payable, the said firm
should make due settlement with the vendor or other person
entitled to payment."

It is averred that large quantities of real estate were purchased,
and that as to each purchase, Kilbourn & Latta represented
that they had negotiated with the owner and obtained
the lots at the lowest price, and that the price agreed on was
the lowest price at which the property could be obtained, and
that complainants relied on those representations; that complainants
called the attention of Kilbourn & Latta to square
No. 115, and requested Kilbourn & Latta to ascertain the
owner and price thereof; that thereafter Kilbourn & Latta
informed complainants that $65,000 was the lowest price at
which the property could be obtained, and advised the purchase,
which complainants authorized, paying $20,000 down, which
was represented by Kilbourn & Latta to be required by the
seller, and the property was conveyed to Latta as trustee for
complainants; that these representations were false, and the
real price, instead of being $65,000, was only $40,000, and the
cash payment required only $8000, instead of $20,000; that
such representations were made for the purpose of cheating
complainants and obtaining from them the sum of $25,000,
which defendants appropriated to their own use; that the real
facts in relation to these purchases were not discovered by them
until March, 1881; that complainants, about the same time and
in substantially the same manner, were defrauded in reference
to the purchase of lot 17 in square 158, the purchase price being
put at $8316, when it was really only $5000; the firm of Kilbourn
& Latta thereby receiving and appropriating $3316;
that Kilbourn & Latta defrauded complainants out of the following
sums through the acquisition of the following pieces of
property: Square 155, the sum of $5319.55; three lots in square

158, the sum of $2663.70; in square 156, the sum of $22,973; that the real truth as to the last transaction did not come to their knowledge until January or February, 1882; that afterwards the property purchased and two other valuable tracts were left in the care of the firm for resale, and in consideration of the probable commissions on such sales the firm agreed that it would keep upon its books the property, look after the payment of taxes, interest and the like, and disburse the funds therefor without any charge; that prior to January 1, 1873, complainants had sent to the firm some $250,000, and on December 31, 1876, Kilbourn & Latta held a balance in cash due to complainants of not less than $20,000, of which they appropriated $16,520 to their own use for the care and management of the property from June, 1872; that the complainants were ignorant of said charges until June, 1878; that being informed in 1877 by defendants that remittances should be sent to Latta for disbursements, considerable sums were sent to him, of which he wrongfully appropriated the sum of $5827.50; that Sunderland individually purchased several parcels of real estate through Kilbourn & Latta under the same agreement, which was left in the hands of the said firm, and out of funds of his in their hands the firm wrongfully appropriated $5973, and also $1000, of which he was not informed until July, 1878; and that the defendant Latta wrongfully appropriated $1672 belonging to Sunderland, of which the latter was ignorant until then.

The defendants in answering denied specifically any such agreement as that alleged by the complainants; averred that such a contract would have been void, if made; insisted that the claims were stale and complainants guilty of *laches*; and set up the statute of frauds and the statute of limitations and a receipt in full upon an accounting. They objected that Stewart was a necessary and indispensable party, averred that their charges for care and management were just, reasonable and proper, and denied all allegations of fraud.

The cause was ordered to be heard by the general term in the first instance, and that court rendered a decree January 9, 1885, in favor of the complainants and against all the defend-

ants for various sums, namely, the sum of $5319.55 for profit
unjustly and illegally detained by the defendants from the
complainants, arising out of the purchase of square No. 155,
and also for the sum of $3316 in respect to profit made by
defendants in the purchase of lot 17 in square No. 158; also
for $8263.33 for overcharge made by defendants for care and
management of complainants' property; and in favor of com-
plainant Thomas Sunderland, individually, in pursuance of the
stipulation of the parties filed in the cause against all of the
defendants, for the sum of $5973.33 for overcharges for care
and management of property belonging to Sunderland; and
also, in pursuance of said stipulation, in favor of Sunderland
individually against Latta individually, for $1672.85, being for
overcharges for care and management; and also, in pursuance
of said stipulation, in favor of complainants against Latta indi-
vidually, for $2838.92 for overcharge made by Latta for care
and management of their property, and for $1235.79, money
retained by Latta from complainants' moneys in his hands.

For the opinion of the court, which was pronounced July 5,
1884, see *Sunderland* v. *Kilbourn*, 3 Mackey, 506.

Subsequently, upon petition for rehearing, the first decree
was vacated and a second rendered January 22, 1885, award-
ing to complainants against defendants the sum of $3316; and
also the sum of $8000 for excessive charges for care and man-
agement; and also in favor of complainants and against Latta
individually of $2500. From this decree an appeal was taken
by the defendants jointly and by Latta individually, which is
No. 188, and appeals by the complainants jointly and by Sun-
derland individually, which are Nos. 261 and 262.

*Mr. M. F. Morris*, for Sunderland, cited : *Smith* v. *Woolfolk*,
115 U. S. 143; *Vallejo* v. *Green*, 16 California, 160; *Nuckolls*
v. *Irwin*, 2 Nebraska, 60; *Lane* v. *Wheless*, 46 Mississippi,
666; *Hettrick* v. *Wilson*, 12 Ohio St. 136; *S. C.* 80 Am. Dec.
337; *Wylie* v. *Coxe*, 15 How. 415; *Boyce* v. *Grundy*, 3 Pet.
210; *Harrison* v. *Rowan*, 4 Wash. C. C. 202; *Gelpcke* v.
*Dubuque*, 1 Wall. 220; *United States* v. *Hodson*, 10 Wall.
395; *Planters' Bank* v. *Union Bank*, 16 Wall. 483; *McBlair*

v. *Gibbes*, 17 How. 232; *Armstrong* v. *Toler*, 11 Wheat. 258; *Patterson* v. *De la Ronde*, 8 Wall. 292.

*Mr. Enoch Totten*, and *Mr. J. M. Wilson*, for Kilbourn, Olmstead and Latta. .

I.. There is no jurisdiction in equity in this cause.   There is a plain, adequate and complete remedy at law.   The prayers of the bill and amended bill are alike; they pray that the defendants "*may account fully* to the complainants of and concerning their said trusts," and that they may "*be* required *by the decree of the court* to pay" the several sums of money which are precisely set out in their pleadings. The widest scope which can be given to their prayers is that they amount to a prayer for a money decree or judgment for the several sums which have been so accurately ascertained. The authorities on this subject are numerous in this court; it is deemed unnecessary to cite authorities from other courts. *Buzard*. v. *Houston*, 119 U. S. 347; *Hayward* v. *Andrews*, 106 U. S. 672; *New York Guarantee Co.* v. *Memphis Water Co.*, 107 U. S. 205; *Sullivan* v. *Portland and Kennebec Railroad*, 94 U. S. 806; *Litchfield* v. *Ballou*, 114 U. S. 190; *Killian* v. *Ebbinghaus*, 110 U. S. 568.

II.   There never was any such special agreement as that set forth in the bill and amendments thereto.

III.   The alleged agreement as set out in the pleadings and as described in the proof is void.

Such a contract is void because inconsistent with public policy.   The two judges who entered the decree appealed from agreed that this alleged contract was void, but notwithstanding this they held, in effect, the agreement would be executed by a court of equity.   This was error.   A double agent of a real estate agent or broker involves inconsistent duties, and it is clear, upon both principle and authority, that in case of such double employment, the contract is void.   It has been doubted whether such double agency, made even with the consent of both buyer and seller, can be upheld on the ground of public policy.   See *Meyer* v. *Hanchett,* 43 Wisconsin, 246;

*Raisin* v. *Clark*, 41 Maryland, 158. That such agencies are void when the employment is concealed from one of the principals, there can be no doubt. *Ringo* v. *Binns*, 10 Pet. 269; *Rupp* v. *Sampson*, 16 Gray, 398; *S. C.* 77 Am. Dec. 416; *Stewart* v. *Mather*, 32 Wisconsin, 344, 355; *Meyer* v. *Hanchett*, 39 Wisconsin, 419; *Farnsworth* v. *Hemmer*, 1 Allen, 494; *S. C.* 79 Am. Dec. 756; *Walker* v. *Osgood*, 98 Mass. 348; *S. C.* 93 Am. Dec. 168; *Bollman* v. *Loomis*, 41 Connecticut, 581; *Everhart* v. *Searle*, 71 Penn. St. 256; *Lloyd* v. *Colston*, 5 Bush, 587; *Shirland* v. *Monitor Iron Works*, 41 Wisconsin, 162; *Marye* v. *Strouse*, 6 Sawyer, 204; *Michaud* v. *Girod*, 4 How. 503; *Conkey* v. *Bond*, 34 Barb. 276; *Bell* v. *McConnell*, 37 Ohio St. 396; *Jacksonville, St. Louis &c. Railroad* v. *Mathers*, 71 Illinois, 592.

IV. The claim is stale and will not be entertained or enforced by a court of equity, because (1) the defendants have had mutual settlements, have transferred property, and their positions were changed during the long silence on the part of the plaintiffs; (2) the defence of the statute of limitations of three years has been interposed by the defendants. To avoid these defences the complainants say they did not discover the alleged fraud till recently when they examined the deeds. But these deeds were recorded, and they were bound by the knowledge which the record disclosed. *Brant* v. *Virginia Coal Co.*, 93 U. S. 326; *Sullivan* v. *Portland and Kennebec Railway*, 94 U. S. 806.

V. The accounts showing the disputed charges and the balance of $2715.58 due the complainants having been received soon after the 26th of November, 1877, by the plaintiffs, and having been retained by them without objections until in June or July, 1878, should be held as conclusive. Between merchants at home an account which has been presented, and no objection made thereto after the lapse of several posts, is treated, under ordinary circumstances, as being by acquiescence a stated account. *Wiggins* v. *Burkham*, 10 Wall. 129; *Chappedelaine* v. *Decheneaux*, 4 Cranch, 306; *Freeland* v. *Heron*, 7 Cranch, 147; *Lockwood* v. *Thorne*, 11 N. Y. 170; *S. C.* 62 Am. Dec. 81; *Richmond M'f'g Co.* v. *Starks*, 4 Mason, 296; *Leather Manufacturers' Bank* v. *Morgan*, 117 U. S. 96.

· VI. The plaintiffs are estopped by accepting and acquiesc-ing in the statement of the accounts and by receiving and by receipting in full for the balance shown thereby $2715.58.

After this "account stated" had been prepared, and, on the 26th of November, 1877, forwarded to the complainants, and by them retained, without objection, for nearly a year, they, on the 10th day of September, 1878, received the balance shown to be due them by that "account stated" to wit, $2715.58, in full discharge and release of the defendants, Kilbourn and Olmstead. This concludes them. See *Vedder* v. *Vedder*, 1 Denio, 260; *United States* v. *Child*, 12 Wall. 232.

VII. Stewart was a partner during all the time the purchases complained of were progressing, and he is interested in proportion to his share in the speculation. His sale of the property did not carry with it the claim based on the misconduct of the defendant: if any there was, such a claim cannot be assigned.

The objection of want of parties is taken in the pleadings. The absence of a necessary party is fatal, and the bill must be dismissed. See *Alexander* v. *Horner*, 1 McCrary, 634; *Robertson* v. *Carson*, 19 Wall. 94.

*Mr. J. H. Rallston* for Hillyer.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

It is argued on behalf of Kilbourn, Latta and Olmstead that Stewart was an indispensable party to the cause, and that the bill should have been dismissed because he was not made such. Title to the real estate purchased by Sunderland, Hillyer and Stewart was placed in Latta in trust as matter of convenience, and it appears that in December, 1872, Stewart sold all his interest to Sunderland, evidencing the transaction by a memorandum in writing, in form of a bill of sale, which is not produced, but the fact is admitted by stipulation, and that he subsequently executed a more formal assignment, which is given in the record. Stewart testifies that Sunderland "was

with the knowledge and consent of the firm of Kilbourn & Latta, substituted in my place, and from that day I ceased to have any interest whatever in the transactions or business." On the 1st of November, 1883, the appearance of Stewart was entered by counsel, with a disclaimer "of all right and cause of action on his part against the defendants, or any of them, on account of any of the matters set forth or involved in this cause." Under these circumstances we regard this objection as untenable.

The point is also pressed that the remedy at law was plain, adequate and complete, and jurisdiction in equity therefore wanting. We do not understand counsel to repudiate the stipulation, or to suggest multifariousness or any objection arising upon the rather unusual mode pursued to secure a conclusion in four cases rolled into one, but to contend that the determination of all the matters in issue belongs on the law side of the court. The defendants fully answered the bill, and raised no such objection, and, the cause being at issue, and evidence taken, it was ordered on the 23d of February, 1883, by consent, to be heard by the general term in the first instance. On the 24th of March, 1884, the defendant moved to dismiss on the ground of the adequacy of the remedy at law.

We have had occasion recently to remark that where it is competent for the court to grant the relief sought, and it has jurisdiction of the subject matter, this objection should be taken at the earliest opportunity and before the defendants enter upon a full defence. *Reynes* v. *Dumont, ante,* 354. By stipulation several suits had in effect been consolidated with the intention, by consent, of adjusting the conflicting claims between Sunderland and Hillyer jointly and Sunderland alone, and Kilbourn, Latta, and Olmstead and Latta alone, and the parties had proceeded in their pleadings upon that theory, and taken all the evidence, and had the cause set down for hearing. It is then suggested that Sunderland and Hillyer and Sunderland cannot maintain their suit in equity, but must be remitted to actions at law. We do not agree with this view.

The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it,

is as efficient as the remedy which equity would confer under the same circumstances. The parties stood in a fiduciary relation towards each other, and, in the course of the transactions between them, from thirty to forty different lots of ground were bought for the complainants in upwards of fifteen distinct purchases. As to five of these purchases fraud is specifically charged. A considerable amount of complainants' money was in defendants' hands, and a counter-claim was set up by them in relation to services performed in and about the care of a portion of the property purchased; services covering many payments for taxes, interest, etc.; making of loans and procuring renewals; receipts and advances. The transactions were all parts of one general enterprise, and the claims of a character involving trust relations. Before the severance of the connection between the parties, Kilbourn & Latta dissolved, and the amounts due from Kilbourn & Latta, if any, and from Latta alone, if any, to Sunderland and Hillyer or to Sunderland, and the offsets and counter-claims of Kilbourn & Latta or of Latta, all sprang from one series of operations, and required an accounting on both sides, and that accounting, until disentangled by the investigation of the court, was apparently complicated and difficult. "There cannot be any real doubt that the remedy in equity, in cases of account, is generally more complete and adequate than it is or can be at law," 1 Story's Eq. Jur. § 450; and, as the remedy at law in the case in hand was rendered embarrassed and doubtful by the conduct of the defendants, and fraud has in equity a more extensive signification than at law, and, as charged here, involved the consideration of the principles applicable to fiduciary and trust relations between the parties throughout the period of their connection, we concur with the Supreme Court of the District in sustaining the jurisdiction.

Complainants proceeded upon the liability of the defendants to account for the unauthorized appropriation of moneys received as complainants' agents, the amount of which they sought to reduce by excessive charges for the care and management of complainants' property; and also for certain differences between what was paid by complainants for property purchased

through defendants at one price, though obtained by defendants at another. The different amounts claimed are sufficiently set forth in the statement of the case.

By the decree the court awarded in favor of the complainants and against all the defendants, the sum of $3316 as received from complainants in the purchase of lot 17, square 158, under circumstances requiring its return, and the sum of $8000 for excessive charges; and in favor of the complainants and against the defendant Latta the sum of $2500 for overcharges; and disallowed all the other items. The correctness of these allowances and disallowances is questioned upon these appeals respectively.

We affirm the conclusions reached by the Supreme Court of the District in disposing of the various amounts alleged to have been so received as to justify a decree against the defendants in respect to them.

As to lot No. 17 in square No. 158, the direction of the complainants to the defendants was, "we are willing to give 50 cents a foot for any property you can get in that square." This was the maximum price, and lot 17 at that rate would have amounted to $8316. The defendants succeeded in purchasing it for $5000, and then charged it to the complainants at the maximum. Clearly, the money so received must be accounted for to the complainants from whom it was obtained by a violation of fiduciary relations.

The claim for profits on square 156, of $14,601, rests on different ground. That property had been purchased by a real estate association in October, 1871, for speculative purposes, and conveyed to Kilbourn by Thomas Young, the vendor, as trustee for the association. Evidence is given by which it is attempted to show that Kilbourn & Latta had been guilty of dereliction of duty as between themselves and the real estate association, and it is argued that they did not account to their associates in that concern for their half of the profits. But with all this these complainants have nothing to do. The profits which Kilbourn & Latta were entitled to as between themselves and the real estate association, and the commissions which they received from the latter can hardly be

held as to be accounted for to these complainants, in the absence of an agreement that the benefit of all contracts defendants had with others should be shared with them.

As to square No. 115, Kilbourn & Latta, before their connection with complainants, had made an offer for the square, which was accepted; and, while the title was being put in marketable shape, in order that the sale might be consummated, their agency for complainants was entered upon. Kilbourn & Latta's bargain for the lot was $40,000, but there was no agreement, as we have said before, that the complainants should have the benefit of all defendants' outstanding contracts, and, as they were contented with their purchase, it is difficult to see upon what ground they can recover here. The relations between the parties were such that Kilbourn & Latta should have disclosed that they were acting as principals in this sale, but the complainants suffered no pecuniary loss for want of such disclosure, since they took the property at their own price. Their remedy, if they were deceived, lay in throwing up the bargain, but they did not do so, and could not treat it, as is well said, (3 Mackey, 525,) " as a contract fulfilled and as a contract broken." The same remarks apply to square 155, and to lot 10 in square No. 158, the bargains having been made before the sales to complainants; and as to lot 8, and half of lot 9 in square No. 158, the defendants deny the receipt even of commissions.

It may be that the money of complainants enabled the defendants to obtain considerable profit in several ventures, but the case made affords no substantial ground for the interposition of the court on that account.

In relation to the alleged overcharges for care and management, the services rendered are set forth in the opinion of the Supreme Court of the District with much particularity, and the grounds for liberality in the premises strongly urged. We do not care to repeat what has been so well stated there. The firm of Kilbourn & Latta was dissolved December 31, 1876, in possession at the time of a large amount of complainants' money, as against which charges were entered on the firm's books December 12, 1876, for "care and management" from

May, 1872, of the property of Sunderland and ·Hillyer, of $16,526.67, and of the property of Sunderland, of $5973.33. Similar charges were made by Latta ·after the dissolution, against Sunderland and Hillyer, to the amount of $5677.85, and against Sunderland, of $1672.85. The court found the complainants entitled to recover the sum of $8000 against all the defendants, and the sum of $2500 against Latta individually. We think the sum of $1235.77 should also be allowed against Latta. His account with Sunderland and Hillyer showed a balance due them, June 20, 1878, of $5480.93, and his account with Sunderland showed an indebtedness from the latter, August 7, 1878, of $4245.16, and, as counsel for complainants concede the propriety of applying this sum on the amount due Sunderland and Hillyer, a balance of $1235.77 is left, for which Latta should account, with .interest from August 7, 1878. The court ruled adversely to the claim of Sunderland against Latta, for overcharges, of $1672.85, in respect to services rendered, and to the claim of Sunderland against all the defendants for $1000 commission on sale of Stewart's house. We accept these results, but we are of opinion that Sunderland should be awarded, against all the defendants, a portion of the $5973.33 charged for services rendered him, and, applying the rule adopted by the District Supreme Court, we decide that he should be decreed the sum of $2986.66 in respect of this item, with interest from December 12, 1876.

In ·answer to the defences of laches and limitation the complainants contend that the alleged bad faith of defendants was not discovered by them until a short time before the bill was filed, and that they had no intelligible information of the excess in charges for care and management until late in June, 1878.

Reasonable diligence is of course essential ·to invoking the activity of the court, but what constitutes such diligence depends upon the facts of the particular case. Where a party injured by fraud is in ignorance of its existence, the duty to commence proceedings arises only upon discovery, and mere submission to an injury after the act inflicting it is completed

cannot generally, and in the absence of other circumstances, take away a right of action, unless such acquiescence continues for the period limited by the statute for the enforcement of such right. *DeBussche* v. *Alt*, 8 Ch. D. 286, 314. We hold that the complainants moved with sufficient promptness upon discovering the fraud, and that although, reposing confidence in their agents, they may have neglected availing themselves of some source of knowledge they might have sought, the defendants cannot be allowed to say that complainants ought to have suspected them, and are chargeable with what they might have found out upon inquiry aroused by such suspicion.

And we are satisfied from the evidence that this suit was commenced as against each and all the defendants within the statutory period, after information of the charges for care and management reached the complainants, and that the accounts were so rendered, that the rule of acquiescence ordinarily obtaining as between merchants is not applicable here.

On the 10th of September, 1878, Sunderland gave Latta a receipt for $2715.58 as "Received of Kilbourn and Olmstead, on account of the late firm of Kilbourn & Latta," signed "Sunderland and Hillyer" and "Thomas Sunderland," that $2715.58 being the amount of complainants' money in their hands, for which defendants admitted their liability, and this is resorted to as conclusive evidence, or at least as of persuasive force, upon the question of the alleged overcharges. In view of the form of the receipt and the testimony as to the facts attending its being signed, we do not attribute that weight to it insisted upon by counsel.

We need not discuss the evidence bearing upon the alleged contract between the parties. Necessarily, the agent for the buyer cannot be the agent for the seller at the same time. But we think that, under the pleadings, the stipulations, and the evidence, a decree was properly passed below and should not be disturbed here for any reason arising upon the record in its bearing upon the original terms of the arrangement, nor have we been convinced by the earnest argument of counsel for complainants that the setting aside of the decree first rendered, and the rendition of another decree in some respects

different, entitles him to a reversal, as the court had power to take the course it did, and upon a consideration of the whole case we are sufficiently satisfied with the result, except in the particulars indicated.

The decree is

*Affirmed, except so far as it fails to allow the sum of $1235.77, in favor of Sunderland and Hillyer against Latta individually, and also the sum of $2986.66, in favor of Sunderland against Kilbourn, Latta and Olmstead; and, as to the non-allowance of those sums, it is reversed; with directions to modify said decree by adding them, with interest, in conformity with this opinion; the costs of this court to be paid by Kilbourn, Latta and Olmstead; and it is so ordered.*

Mr. Justice Field dissented.