Coxe, District Judge.
The bill is in the usual form, alleging infringement of two letters, patent, numbered respectively 318,731 and 344,435, for improvements in shoe-upper machines. The validity of both patents is undisputed. The defendants oppose the motion upon two principal grounds—noninfringement and laches. The question of infringement of the third claim of the patent granted to Charles B. EÉatfield, No. 318,731, was decided at the argument. The device which the complainant produces as a sample of the defendants’ manufacture certainly infringes when the irons are stationary, but it is thought this condi *151 tion was produced rather by accident than design. The device which the defendants produce as a sample of their present manufacture does-not infringe; and, when operated as defendants insist it always should be operated, cannot be made to infringe. The defendants should not be permitted to sell devices like the former or prevented from selling devices like the latter.
The other patent, No. 344,435, was granted to Quentin W. Booth, one of the defendants, on the 29th of June, 1886. The patent was duly assigned to the complainant. It is intended to cover improvements-upon the machine described in No. 318,731, the other patent in suit-The only claim in issue is as follows:
“In a machine for beading shoe uppers, the combination of the arm, the stationary jaw secured to the end of the arm, the movable jaw, the rod connected with the movable jaw, and the eccentric for giving motion to the rod, as set forth.”
The machine made by the defendants has all these elements in combination substantially like the combination of the claim, but it is said that an examination of the prior art renders a narrow construction necessary, and, if so construed, the defendants do not infringe the claim.
At the time the patents were assigned the defendants also transferred by a written agreement—
‘‘All of their right, title and interest in the automatic shoe header, i. e., patent, header mdse, on hand and header special tools belonging thereto, as-shown in inventory and ledger of the company. The parties of the first part further agree not to manufacture, sell or handle or cause to be manufactured, sold or handled any of said shoe headers or make any improvement on the same that would adapt it to any other kind of work than that for which it is now intended, without the consent of the party of the second part. ”
It is true that this action is not based on the contract, but the language quoted, if it has no other signification, certainly throws some light upon the interpretation and scope of the claim as understood by the defendants at the time they sold the patents, the machines and the tools for making them, to the complainant’s predecessors. They appear to-have thought at that time that the purchasers of the patents were invested with a broad monopoly of the business in question. If their present contention is correct the complainant obtained nothing of real value. Parties situated as the defendants are do not occupy as favorable a position in a court of equity as those who infringe ignorantly or inadvertently. As against the defendants the patents must be liberally construed. Further discussion of this question should be reserved until the final hearing, when it can be determined more satisfactorily than upon the comparatively crude presentation of a motion of this character. At present it is sufficient to say that I am inclined to think the claim in question has been infringed.
The bill was filed July 15, 1892. Several affidavits tending to show that the existence of the defendants’ machine was known to Charles B. Hatfield during the summer of 1891 have been read. Assuming these statements to be true, and assuming also that the knowledge *152 of Hatfield, who assigned his patent in May, 1885, can be imputed to the complainant, still the proof is insufficient. The time which elapsed before the defendants were notified to desist from infringing was only about eight months, and the suit was commenced within four months thereafter. In the circumstances of this cause the delay was too short to constitute laches. Collignon v. Hayes, 8 Fed. Rep. 912, 916; Kilbourn v. Sunderland, 130 U. S. 505, 518, 9 Sup. Ct. Rep. 594. The testimony seeking to fasten knowledge upon the complainant himself as early as the autumn of 1889 is too vague and uncertain to prevail against his positive denial. For the reasons stated at the argum'ent the defendants should have an opportunity to give a bond if they so desire.
An injunction may issue, unless within 10 days from the date of the service of a copy of the order entered upon this decision, the defendants shall give a bond in the sum of 16,000, conditioned, substantially, as in Swift v. Jenks, 19 Fed. Rep, 641. If a bond is given the complainant can at any time move to increase the amount upon sufficient proof that it is inadequate.