Argued January 21, affirmed February 8, 1921.

## SCHMIDT *v.* WIRTH.

(195 Pac. 375.)

**Principal and Agent—Whether Defendant Plaintiffs' Agent in Purchasing Farm a Jury Question.**

1. In view of the testimony of friendship, personal relations, and conduct of the parties, etc., question whether defendant acted as agent for plaintiffs in purchasing a farm *held* for the jury.

**Appeal and Error—Jury Finding on Question of Fact Conclusive.**

2. Where there was sufficient evidence to take question of agency to jury, its finding thereon will not be disturbed on appeal.

**Evidence—Oral Testimony, Showing Consideration for Contract for Sale of Land, Admissible.**

3. In an action by plaintiffs, claiming that defendant, their agent to purchase a farm, bought for $7,000, but overstated the price to them by $1,052, so that they entered into a contract to purchase from him for $8,052, oral testimony was admissible to show the actual consideration for the contract between plaintiffs and defendant.

**Principal and Agent—Evidence Held to Sustain Verdict Against Agent for Overcharge on Purchase of Land.**

4. In an action by plaintiffs against defendant, their agent to purchase land, on the theory that through fraudulent misrepresentations he misled them as to the amount paid by him, so that they paid him $1,052 more than he paid for the land, evidence *held* sufficient to sustain verdict for plaintiffs on the questions whether defendant was acting as their agent, whether he misled them through fraudulent statements, etc.

From Yamhill: HARRY H. BELT, Judge.

Department 1.

The plaintiffs are husband and wife, and all the parties are of German birth, the defendant coming

to America many years prior to the plaintiffs. For about thirteen years they were close personal friends. At the particular times alleged, the plaintiffs were the owners of, and operated, a small dairy farm near Portland, and the defendant lived upon his farm in Yamhill County, Oregon. Plaintiffs knew but little of the language, habits, and customs of the people here, and relied more or less upon the defendant, who acted as their advisor. Plaintiffs claim that defendant, in order that they might be near to each other, counseled them to sell their dairy interests at Portland and purchase and settle upon a farm in Yamhill County, and that on account of his friendship he would find a suitable place for them in his vicinity at a reasonable price, and without any cost or charge for his services. The complaint alleges that, acting and relying upon the offer of defendant, the plaintiffs were induced to, and did, authorize the defendant to find for them, without charge, a suitable farm; that about May 21, 1918, he advised them that he had found a 366-acre tract which could be purchased at the price of $22 or $22.50 per acre; that plaintiffs visited the premises, found them satisfactory, agreed to purchase them, and directed the defendant to negotiate with the owner and obtain his best terms; that as a result thereof, defendant purchased the lands for $7,000, of which he paid $1,000, cash, upon the execution of the deed, which he took in his own name, and gave his promissory note for $6,000, secured by a first mortgage upon the premises, for the balance of the purchase price; that the defendant, for the purpose of cheating and defrauding the plaintiffs, falsely represented to them that the purchase price was $8,052, which he had been compelled to, and did, pay for the land; that in addi-

tion to giving the $6,000 note he was required to pay
$2,052 in cash; that he had taken the deed in his own
name to protect himself, and that he would convey
the premises to them subject to the mortgage upon re-
ceipt of the $2,052 which he had advanced; that, rely-
ing upon the defendant's statements and representa-
tions, and believing them to be true, the plaintiffs,
on the eighteenth day of September, 1918, entered
into a written contract with the defendant, a copy
of which is attached to the complaint, in and by which
they agreed to pay him $8,052 for the land; that,
being deceived and misled thereby, the plaintiffs were
induced to, and did, comply with the terms and con-
ditions of said contract, and, on December 20, 1918,
did pay the defendant $2,052 in cash, at which time
he executed to them a deed for the lands, subject to
the mortgage of $6,000; that the representations of
the defendant were false and untrue, and were made·
for the sole purpose and with intent to cheat and de-
fraud the plaintiffs out of $1,052, for which they ask
judgment with interest.

The defendant filed a demurrer to the complaint,
upon the ground that it did not state facts sufficient
to constitute a cause of action, which was overruled.

An answer was filed, admitting the execution of
the contract, the payment of the $2,052, the convey-
ance of the lands to plaintiffs subject to the mort-
gage, and denying all other material allegations of
the complaint, and as a further and separate defense,
defendant alleges that he purchased the lands for
himself, and that there was no understanding or
agreement that they were purchased for the use or
benefit of the plaintiffs; that he did not make any
false statements or representations; that plaintiffs
purchased after a personal inspection of the prem-

ises, and agreed to pay $8,052, which was a reasonable price. A reply was filed. Trial was had, during which the defendant filed motions for nonsuit and directed verdict, both of which were overruled, and the jury returned a verdict for the full amount of plaintiffs' claim, upon which judgment was entered, and from which defendant appeals, claiming that the court erred in overruling the motions for nonsuit and directed verdict; in the admission of oral testimony, and any conversations of defendant with plaintiffs and other witnesses previous to the execution of the contract, for the reason that it tended to contradict and vary the terms of a written instrument; in the giving of certain instructions of the plaintiffs, and in the refusal to give instructions requested by the defendant.          Affirmed.

For appellant there was a brief over the names of *Mr. James E. Burdett* and *Mr. Howard C. Gildea,* with an oral argument by *Mr. Burdett.*

For respondent there was a brief with oral arguments by *Mr. W. T. Vinton* and *Mr. Walter L. Tooze, Jr.*

JOHNS, J.—About May 21, 1918, Hattie, L., W. C. and Pearl Campbell executed to the defendant a warranty deed to the lands described in the complaint, which recites that it was for "ten dollars and other valuable considerations." The actual consideration was $7,000, $1,000 of which was paid in cash and the other $6,000 evidenced by the defendant's promissory note and secured by a first mortgage on the lands. At the time the Campbells signed their deed, there was a pending lease of the premises to one Hugh Munro, for the period of one year, from Octo-

ber 1, 1917, to October 1, 1918, which, after obtaining
his deed, the defendant purchased for the sum of
$250.   Within a week thereafter, defendant .went to
plaintiffs' home in Portland and advised them as to
what he had done.   At that time they paid him $50
in cash, and, about 30 days later, $200 more, as a
result of which they went upon the lands, harvested
the crop of hay for that year, and put it in the barn
on the premises.   On the 8th of July, 1918, plaintiff,
W. Schmidt, took out a fire insurance policy for $300
upon the crop, in his favor.   On September 13, 1918,
the defendant entered into a written contract with
the plaintiff, W. Schmidt, in and by which, and for
an express consideration of $8,052, the defendant
agreed to convey the same lands to plaintiffs.   One
thousand eight hundred and fifty-two dollars was to
be paid on or before December 28, 1918, without in-
terest, and for the balance, Schmidt was to assume
and agree to pay the $6,000 mortgage and hold the
defendant harmless.   Possession was delivered as of
the date of the contract.   The contract provided that,
if Schmidt should fail to make the payment of $1,852
on or before December 28, 1918, he would forfeit the
$200 which he then paid, and that the defendant could
enter and have possession.   Plaintiffs performed
their part of this contract, and on December 20, 1918,
the defendant and his wife executed a warranty deed
of the land to the plaintiffs, subject to the $6,000
mortgage, which the plaintiffs assumed and agreed
to pay.   This deed recites a consideration of ''Ten
and no/100 Dollars.''

1, 2. It is the theory of the complaint that the de-
fendant was the agent of, and purchased the land for
the use and benefit of the plaintiffs, and that he con-
cealed from them the true consideration; that in

ignorance of the facts, and relying upon his integrity as their agent, they were induced to, and did, enter into a written contract for its purchase at a price of $1,052 more than the defendant paid for it.

The court admitted testimony of the friendship, personal relations, and conduct of the parties, and of all the facts and circumstances which surrounded and led up to the execution of the contract, as tending to show that the defendant was acting as the agent of plaintiffs when he purchased the land. In its inception, the question of agency rested in parol. Mechem on Agency, Volume 1 (2 ed.), Section 50, says:

" * * But where there is no writing, and the facts are in dispute, or where there is no dispute as to the facts, but more than one inference may fairly be drawn from them, the jury must determine, under proper instructions from the court, not only what the facts are, but also what is their effect under the court's instructions upon the law."

Hence, the question of agency was a question of fact to be determined by the jury, which found for the plaintiffs, and upon which the testimony is conclusive. The same author, at Section 1225, says:

"It matters not how fair the conduct of the agent may have been in the particular case, nor that the principal would have been no better off if the agent had strictly pursued his authority, nor that the principal was not in fact injured by the intervention of the agent for his own benefit. The result is still the same. If the agent, dealing legitimately with the subject matter of his agency, acquires a profit; or if by departing from his instructions, he obtains a better result than would have been obtained by following them, the principal may claim the advantage thus obtained, even though the agent may have contributed his own funds or responsibility in producing the result."

At Section 1233, the author says:

"In practically every case wherein the principal has proximately suffered loss, the principal may sustain an action of tort against the agent based upon the latter's breach of duty."

Upon the "proof of the agency," at Section 1237, the author says:

"That the agent was acting as such in the case in question, may be shown by the facts and circumstances, or result from the presumed continuance of a prior relation."

Section 1234 is as follows:

"In practically any case in which an action of tort for breach of duty might be maintained, an action of *assumpsit* could be used instead, based upon the theory that wherever a duty arises from the relation there is a promise, either implied in fact or created by mere operation of law, to perform that duty.

"In practically any case, also, in which the agent has received money which equitably and in good conscience belongs to the principal, an action for money had and received might be maintained."

In 31 Cyc., page 1227, we read:

"In general, no written instrument or particular form of words is necessary to constitute the relation of principal and agent."

On page 1436, the same author states:

"An agent may be compelled to account for profits * * by purchasing at a less price than that which he charges the principal for the property, unless the principal had full knowledge of such facts and consented thereto."

On page 1440 is the following:

"For the same reason an agent authorized to purchase property for his principal must not, except with the principal's full knowledge and consent, purchase the property from himself either directly or indi-

rectly; and in accordance with this rule, an agent employed to purchase cannot purchase the property for himself and then resell it to the principal at an advance.''

3. The plaintiffs having pleaded the written contract; which shows that the purchase price between plaintiffs and defendant was $8,052, defendant contends that parol evidence is not admissible to change or vary its terms, and that the complaint does not state a cause of action. It will be noted that the deed from the Campbells to defendant recites ''Ten dollars and other valuable considerations,'' and yet there were $7 in canceled revenue stamps on that deed, and defendant admits that he paid $7,000 for the land; that the conveyance from defendant to plaintiffs recites a consideration of ''Ten and no/100 dollars,'' upon which there are no revenue stamps; yet the actual consideration which the defendant received was $8,052. Here, the contract was fully executed, and the purchase price was paid at the time the defendant made his deed to the plaintiffs. They are not seeking to change, set aside, or impeach the contract. The only question involved is the consideration which the plaintiffs should have paid for the land. In legal effect, they claim that through the fraud and deceit of the defendant, acting as their agent in the purchase of the land, they were induced to, and did, pay him $1,052 more than he should have received, and that they are entitled to recover from him the amount of such overpayment. That question goes only to the consideration which entered into the contract; hence, the complaint states a cause of action, and oral testimony was admissible to show the actual consideration. The defendant admits that he purchased the lands for $7,000, and that in accord with

the terms of the written contract the plaintiffs paid him $8,052 for the same property.

4. Among other instructions, the court gave the following:

"The important thing for you to consider in this case, when you retire to your jury-room for deliberation, is whether, at the time of the consummation of the deal from the Campbells to Wirth, he was at that time acting as agent and for and on behalf of plaintiffs, or at that time was he buying that property for himself. If you reach the conclusion that at the time deed was made from the Campbells to Wirth that he was buying this property for himself, that would end your deliberations, and your verdict should be for the defendant. If you reach the conclusion, as a result of the greater weight of the evidence, that at the time of the execution of said deed, he was buying this farm for the plaintiffs, then you should next proceed to the question as to whether or not the plaintiffs have been defrauded, as charged in the complaint.

"If you reach the conclusion that they were defrauded as charged in the complaint, and that the relationship of agency existed at the time of the execution of this deed, then the plaintiffs are entitled to prevail. * *

"Even if you believe that at one time, and prior to the execution of the deed from the Campbells to Wirth, that Wirth was acting as agent for the plaintiffs, you could not from that fact in itself draw the inference that the relationship of principal and agent existed at the time of the execution of the deed. The real and vital question is, 'Was the relationship of principal and agent in existence at the time of the execution of the Campbell deed?'"

It appears from the entire charge of the court that the jury was fully and fairly instructed, that before it could find for the plaintiffs it must be satisfied by a preponderance of the evidence that, when the de-

fendant purchased the land from the Campbells, he was acting as the agent of the plaintiffs, and that he acquired the property for their use and benefit; that, through fraudulent statements and misrepresentations he misled and deceived them as to the amount of the purchase price, and that relying thereon they paid him $1,052 in excess of the amount which he paid the Campbells. Upon such questions the jury found for the plaintiffs, and the evidence sustains the verdict. The judgment is affirmed. ·      AFFIRMED.

McBRIDE, BENSON and HARRIS, JJ., concur.