Argued September 5, affirmed October 17 petition for
rehearing denied November 13, 1974

BECKER, *Appellant, v.* CAPWELL, *Respondent.*

527 P2d 120

*Ridgway K. Foley, Jr.,* Portland, argued the cause for appellant. With him on the briefs were A. Allan Franzke, Robert G. Simpson, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*Myron L. Enfield,* Salem, argued the cause for respondent. With him on the brief was Peery T. Buren, Salem.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL and BRYSON, Justices.

**HOWELL, J.**

Plaintiff filed this action at law to recover alleged "secret profits" from the defendant, who was plaintiff's agent and a real estate broker. The trial court granted defendant's motion for a judgment of involuntary nonsuit, and plaintiff appeals.

On June 3, 1969, the defendant purchased certain property known as the Lancaster property.[①] Defendant was an experienced real estate broker who worked as a consultant for clients on an ongoing basis. His services consisted of the purchase, sale and exchange of investment real property on behalf of his clients.

The plaintiff, a medical doctor with no prior land investment experience, became acquainted with an employe of the defendant who explained the defendant's services. On or about September 15, 1969, the plaintiff was introduced to the defendant. Shortly thereafter the plaintiff and the defendant entered into an agreement whereby the defendant would advise the plaintiff concerning investment real property.

The defendant's employe told the plaintiff that the Lancaster property was for sale and made a favorable analysis of it. Defendant did not disclose that the property was owned by the defendant, or the price which the defendant had paid for the property in June 1969. The plaintiff purchased the property in early October 1969.

---

[①] The property was actually purchased in the name of Pacific Land-Lord Corporation. This "corporation" was dissolved by the Oregon Corporation Commissioner on August 14, 1968. The defendant owned all the assets of the dissolved corporation and was, he admits, the corporation.

Plaintiff contends that his measure of damages is the "secret profit" made by the defendant—the difference between the amount defendant originally paid for the property and the price at which defendant sold the property to plaintiff. The defendant contends that the proper measure of damages is the difference between the price paid by plaintiff to defendant and the actual value of the property. The plaintiff introduced no evidence of the actual value, and for this reason the trial court granted the motion for a judgment of involuntary nonsuit.

The precise question is: What is the measure of damages when an agent acquires property prior to the creation of the agency relationship and subsequently sells that property to his principal without disclosure of his adverse interest?

■■ It is clear that an agency relationship was created between the plaintiff and the defendant. It is also clear that, by his actions concerning the Lancaster property, the defendant breached his duty to the plaintiff:

> "* * * [A] real estate broker stands in a fiduciary relationship with his customer or client and is thus bound to protect his clients' interests. He must, therefore, make a full, fair and understandable explanation to the client before having him sign any contracts, particularly when those contracts are with the broker himself. * * *" *Prall v. Gooden et ux,* 226 Or 554, 561, 360 P2d 759 (1961).

*See also Widing et al v. Jensen, Real Estate Com.,* 231 Or 541, 373 P2d 661 (1962); ORS 696.300 (1)(e), (g); 2 Restatement 204, Agency 2d § 389.

In support of his contention that he is entitled to recover the difference between the original price

paid by the defendant and the sale price to plaintiff, plaintiff cites 2 Restatement, supra at 203, § 388:

"Unless otherwise agreed, an agent who makes a profit in connection with transactions conducted by him on behalf of the principal is under a duty to give such profit to the principal."

We agree with this principle. However, the comments to § 388 indicate that the section applies to profits or gratuities received by the agent while acting for his principal. Here we are dealing with real property purchased by the agent before any agency relationship was established with the principal.

When an agent sells his property to his principal without full disclosure of the material facts, the remedies available to the principal depend upon the facts of the case.

■ The equitable remedy of rescission is available whenever there is a breach of the agent's fiduciary duty by a failure to disclose material facts. 2 Restatement, supra at 208, 209, § 390, presents the example where the principal knows that he is purchasing the agent's land but other material facts remain undisclosed:

"P employs A to purchase a suitable manufacturing site for him. A owns one which is suitable and sells it to P at the fair price of $25,000, telling P all the relevant facts except that, a short time previously, he purchased the land for $15,000. The transaction can be rescinded by P." (Comment a, illustration 2.)

If the principal elects to pursue a legal remedy against his agent, the proper measure of damages also depends upon the facts of the case.

■ The breach of a fiduciary duty by a real estate agent is analogous to the breach of a duty by a trustee.

In that context, Professor Scott, in The Law of Trusts, discusses the different measures of damages.[2]

██ As a general rule, if the agent sells his property to the principal at a price greater than the value of the property and he fails to disclose all material facts, he may be liable in damages for the difference between the sales price and the value of the property. II Scott on Trusts 1327-28, § 170.12 (3d ed 1967); *Oliver v. Lansing,* 48 Neb 338, 67 NW 195 (1896). In such a case it is incumbent upon the plaintiff to plead and prove that there was a difference between the price and the market value. *Whitehead et al v. Lynn,* 20 Colo App 51, 76 P 1119 (1896); *Ely v. Hanford,* 65 Ill 267 (1872).

█ If an agent purchases property for the purpose of reselling it to his principal and fails to make full disclosure of the material facts, he will be liable for any profit he makes on the transaction. *Schmidt v. Wirth,* 99 Or 261, 195 P 375 (1921). II Scott on Trusts, supra. *See also* 2 Restatement, supra at 203. The agent is liable for the profits regardless of how fair the transaction may be to the principal. *Schmidt v. Wirth,* supra.

[2] "Where the trustee sells his individual property to the trust and thereby makes a profit, he is accountable to the beneficiaries for the profit. Thus if the price at which he sold it to the trust was more than the value of the property at the time of the sale, the beneficiaries can compel him to repay the amount of the difference. Even if he sold the property to the trust for no more than its value at the time of the sale, he is accountable to the trust for the difference beween the purchase price and the amount for which the trustee purchased it, *if he purchased it for the purpose of reselling it. But if he did not purchase it for that purpose and sells it to the trust for no more than its value at the time of the sale, he is not accountable for any profit, since he made no profit out of the transaction; but even in such a case the beneficiary can set aside the sale and require him to repay the purchase price,* although the property has fallen in value subsequent to the sale. In other words, the trustee must account for any profit he makes through the sale, and is chargeable with any loss suffered by the trust estate." (Emphasis added; footnotes omitted.) II Scott on Trusts 1327-28, § 170.12 (3d ed 1967).

*See also Marnon v. Vaughan Motor Co., Inc.,* 184 Or 103, 168, 194 P2d 992 (1948).

■ If an agent purchases property for a purpose other than to resell it to his principal and subsequently does resell it to his principal, the principal may elect to rescind the contract or to recover any difference between the actual value of the property and the sale price to the principal. *Kilbourn v. Sunderland,* 130 US 505, 517, 9 S Ct 594, 32 L Ed 1005 (1889); *White-head et al v. Lynn,* supra; *Ely v. Hanford,* supra; II Scott on Trusts, supra.

> "The remedy of the principal in such a case is usually the repudiation of the transaction. He cannot, it is held, recover, as a profit made by the agent, the difference between the amount at which the agent sold to him and the price which the agent may have paid for the property before the agency was created, though he may recover the difference between the price paid by the principal and the fair value." 1 Mechem on Agency (2d ed) 880, § 1205 (1914).

■ The instant case falls within the latter category. The defendant purchased the property before the agency was created and with no intention of selling it to plaintiff because he did not meet plaintiff until three months later. Because of defendant's failure to disclose the material facts of his ownership, the plaintiff was entitled to rescind the transaction or bring an action at law for damages. In the latter event, in order to recover damages the plaintiff would have to show a difference in value between the price he paid for the property and its actual value at the time he purchased it from defendant.[9] He failed to do so.

---

[9] If the rule were otherwise, a broker who purchased property for $5,000 in 1954 and sold it to a principal in 1974 for its fair

We believe that the case of *Thimsen v. Reigard,* 95 Or 45, 186 P 559 (1920), relied upon by plaintiff, is distinguishable. Although the facts in that opinion are unclear, it appears that an attorney obtained options on two parcels of land. A short time later the attorney became the agent of the plaintiff for the purchase of the land. He represented that the property could be purchased for $10,000, while the options actually were for $8,000. The property was purchased *after* the agency was created. In the case at hand, the agent purchased the property prior to the creation of any agency relationship with the plaintiff.

In this case the plaintiff elected to bring an action at law for damages rather than a suit for rescission. He was therefore obligated to prove that there was a difference between the actual value of the property and the sale price. Having failed to do so the trial court properly allowed defendant's motion for a judgment of involuntary nonsuit.

Affirmed.

---

market value of $50,000 would still be liable for damages of $45,000, the difference between his purchase price and the sale price.