GERMAN-AMERICAN INV. CO. OF NEW YORK v. CITY OF YOUNGS-
TOWN.

(Circuit Court, N. D. Ohio, W. D. May 24, 1895.)

No. 5,286.

1. EQUITY—JURISDICTION—INADEQUATE REMEDY AT LAW.
The city of Y. advertised for bids for certain bonds about to be issued by it. Complainant submitted the highest bid, and was notified that the same would be accepted. It then asked for information and documents relating to the bonds, in order to submit them to its counsel, and, after receiving an opinion from its counsel that the bonds were invalid, declined

to take them, and demanded the return of $3,500, deposited on making its bid. The city refused to return the money, and notified complainant that it would sell the bonds to the highest bidder, and hold complainant liable for any loss. Thereupon complainant filed its bill, praying an adjudication as to the validity of the bonds, a return of the $3,500 if they were found invalid, or the delivery of the bonds on payment of the price if found valid, and an injunction against the city's disposing of the bonds. *Held*, that equity had jurisdiction of the suit, the remedy at law being inadequate.

2. MUNICIPAL CORPORATIONS—SPECIAL ACTS—OHIO CONSTITUTION.

The constitution of Ohio provides (article 13, § 1) that "the general assembly shall pass no special act conferring corporate powers." By sections 2835–2837, Rev. St. Ohio, municipal corporations are given power to issue bonds for the erection of waterworks, provided that, before such bonds are issued, the question of issuing them is submitted to a vote of the electors and two-thirds vote in favor of the issue. *Held*, that an act authorizing a named municipal corporation to issue bonds for the erection of waterworks, without requiring the submission of the question to the electors, is a special act conferring corporate powers, and is invalid under such constitutional provision.

This was a suit by the German-American Investment Company of New York against the city of Youngstown, Ohio, for the construction of an act of the legislature, and for other relief. The cause was heard upon the bill and answer.

S. D. Dodge and Williamson & Cushing, for complainant.

John A. L. Campbell, M. A. Norris, and King, McVey & Robinson, for defendant.

RICKS, District Judge. On April 25, 1894, the legislature of Ohio passed an act authorizing the city council of the city of Youngstown to issue bonds to extend and improve the waterworks of said city, and to provide for the payment thereof. The amount of bonds so issued was not to exceed $186,000, and they were to be of such denomination and payable at such times, not to exceed 20 years from the date of issue thereof, as the city council of said city might determine, and should bear a rate of interest not to exceed 6 per cent. Soon after the passage of said act, the city clerk of Youngstown issued a circular notice, inviting sealed proposals for the purchase of $160,000 of the said bonds, which bids were to be filed on or before 2 o'clock, standard time, June 18, 1894. In compliance with said circular, the complainant filed its bid, in which it offered to purchase said bonds for the sum of $172,752, and deposited with the defendant, as security for the performance of said bid, the sum of $3,500. Upon being notified that its bid was the highest and best bid, and was accepted, the complainant requested of the defendant all information and documents relating to the authority of the city to issue such bonds, in order that it might submit the same to its counsel to determine whether or not they were valid. Such information was duly furnished and submitted to its counsel, who gave a written opinion that such bonds were invalid. Thereupon the complainant notified the defendant of such opinion, refused to take the bonds, and requested the return of said sum of $3,500. This request the defendant refused, and therefore notified the complainant that it would sell said bonds to the highest bidder, and hold it liable for damages

for failure to comply with its bid. Thereupon, on July 18, 1894, the complainant filed its bill in this court, setting forth the above facts, and averring that, up to the time of the acceptance by the defendant of the complainant's bid for said bonds, complainant had no knowledge or means of knowledge of the validity of said bonds, or as to the act under which they were issued, and made said bid upon the faith of the validity of said bonds and the incorporate power and authority of the defendant to issue the same; and further averring that said bonds were negotiable in form, and payable to bearer, and that in consequence of doubts that had been raised and existed as aforesaid, respecting the validity of said bonds, the same cannot now be sold for their actual market value, which they could have if free from such doubt as to their validity. If said bonds are valid, complainant avers that they are worth the amount bid for same, but, if invalid, they are altogther worthless and void, and it would be impossible to determine as to the validity of the same and the rights of the complainant under its said bid without the intervention of a court of equity, which would determine finally as to the validity of said bonds, and whether, under its said bid, the complainant should take the same, or whether the defendant should refuse to return the amount of the deposit aforesaid. If the defendant should carry out its threat, and should sell said bonds, such sale would necessarily be for very much less than the value they would have if free from such doubt, and, in case it should be finally determined that the said bonds are valid, such sale would cause this complainant irreparable loss, and one which could not be adequately compensated in damages, and for which the complainant would have no redress in a court of law. Wherefore the complainant prays that it be adjudged and decreed: First, whether said act of the legislature was valid; second, that if this court should determine that such statute is unconstitutional, and the said bonds are invalid and void, the defendant be adjudged to pay this complainant the $3,500 so deposited as aforesaid; third, that if this honorable court shall determine that said statute is constitutional and valid, and the said bonds are valid and binding obligations of the defendant, the defendant be adjudged to issue and deliver the same to the complainant upon its paying to the defendant the unpaid balance of the purchase price thereof, and for other and general relief; and in the meantime, and during the pendency of this action, the bill prayed for an injunction restraining the defendant and its agents from selling or transferring said bonds. A temporary restraining order was granted, prohibiting the said city of Youngstown from disposing of said bonds until the case could be heard upon its merits.

In due course of procedure, the city filed its answer, in which, among other things, it affirms and contends that the special act of the legislature under which said bonds were issued is a constitutional enactment, and the bonds issued thereunder are valid; that the complainant bid for his bonds having notice of the public legislation on the subject; that its bid had no qualification that such

bonds were to be subject to the approval of its counsel; and denies that, if the complainant's bid was accepted, the papers showing the authority of the defendant to issue said bonds were to be submitted to counsel for the successful bidder; and the defendant avers that said papers were furnished before the complainant made its bid, and the complainant had full opportunity to ascertain the opinion of its counsel, and should have done so before it made its bid for said bonds. The defendant further admits that the complainant requested the return of the $3,500 deposit, which the defendant refused. It admits that it never obtained the consent of persons owning two-thirds of the taxable property within its corporate limits to the issue of said bonds, and denies that the statute in controversy is in violation of section 26 of article 2 of the constitution of the state of Ohio, which provides that all laws of a general nature shall have a uniform operation throughout the state.

The defendant, after denying other averments, which are not material here to be considered, closes its answer with this allegation:

"That the complainant's bill of complaint ought to be dismissed at its costs, because it does not state any cause of action nor ground of complaint that in equity or good conscience ought to give the complainant any relief in this honorable court."

The above statement contains the main facts necessary to be considered in the disposition of the questions arising in this controversy. The defendant, on the argument of the case, seriously pressed the question of jurisdiction, contending that, under the averments of the bill, no case is presented of which this court has equitable cognizance. This contention is based principally upon the claim that, if the complainant has suffered any injury by reason of the allegations of its bill, it has a complete and adequate remedy at law. On behalf of the complainant, it is urged that the bill in its general scope is one asking for a specific performance of a contract which the defendant, by its circular letter and proposal, undertook to perform. This contract was to furnish bonds of the city of Youngstown, which were valid, and which were issued under an act of the legislature which was in full compliance with the requirements of the constitution of the state of Ohio. This, the bill avers, the defendant failed to perform, because it says that by the opinion of counsel eminent in the law, and specially qualified to pass upon such questions, it was advised that said bonds were invalid. Under these circumstances, the complainant's remedy at law would be neither as plain nor as adequate as its remedy in equity. The remedy at law would compel the complainant to decide at its own peril whether the special act of the legislature, under which the bonds were issued was valid or not, and would subject it to the unnecessary risk of loss, whether it took the bonds and they proved to be invalid, or whether it refused the bonds and they were sold at a depreciation on account of the prevailing doubt of their validity, and should thereafter be held valid.

Counsel for the complainant contend that the following equitable elements are presented by the bill.

"(1) The prayer for injunction pending decision as to the validity of the act. "(2) The saving of multiplicity of suits which might otherwise arise, as if the bonds are refused, a suit may be brought by the complainant to recover its forfeit, and a suit by the city to recover damages suffered on resale; or, if the complainant accepts the bonds, there may be suits by taxpayers to enjoin the levy of taxes to pay them, or the city may refuse to pay them, and force the holder to sue on the bonds; and, if he should recover judgment by reason of any supposed estoppel by any recitals of the bond, he might still have to contend with the city as to its liability to levy an extra tax to pay them, on the theory that estoppel as to the bonds might not be estoppel as to the extra tax requirement. "(3) The suit is in the nature of one for the specific performance of the city's contract to deliver valid bonds, as hereinbefore already stated."

· The doctrine that a complete and adequate remedy at law is open to the complainant, and defeats the jurisdiction of a court of equity, has been very much modified by recent decisions.

In the case of Kilbourn v. Sunderland, 130 U. S. 505, 9 Sup. Ct. 594, the supreme court say:

"The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would confer under the same circumstances."

It will hardly be seriously contended in this case, considering the peculiar circumstances under which the complainant was placed by the action of the defendant, that its remedy at law was as complete or as efficient as the one now sought on the equity side of the court. The defendant, by its own acts, placed the complainant in a position where it was called upon to incur the risk of great loss, providing the issue of bonds which the defendant had made should be declared valid.

Mr. Justice Story, in his work on Equity Jurisprudence (paragraph 717a), goes even further than this, and says:

"The truth is that, upon the principles of natural justice, courts of equity might proceed much further, and might insist upon decreeing a specific performance of all bona fide contracts, since that is a remedy to which courts of law are inadequate. There is no pretense for the complaints sometimes made by the common-law lawyers that such relief in equity would wholly subvert the remedy by actions of the case and actions of covenant, for it is against conscience that a party should have a right of election, whether he would perform his covenant, or only pay damages for the breach of it."

No person or corporation is more interested in the proper determination of this question than the defendant itself. It is not to be presumed that the people of the city of Youngstown desire to have bonds sold which are invalid, and which would result in loss to the purchasers thereof. The court is therefore of the opinion that, having jurisdiction of the parties and the subject-matter, it is in its power to grant the relief to which the complainant is entitled under the law in this case.

This brings us to the consideration of the question whether or not the bonds issued in this case are invalid because of the unconstitutionality of the special act of the legislature under which they were issued. Section 1, art. 13, of the constitution of Ohio, provides that "the general assembly shall pass no special act conferring 'corporate powers.'" It is claimed on behalf of the defendant in this case that the city of Youngstown had the power to issue the bonds in controversy, under the general authority conferred upon munic-

ipal corporations by section 2835, as amended by the act of April 21, 1893, and sections 2836 and 2837 of the Revised Statutes of the state of Ohio. Under these three sections of the statutes, it is clear that the city of Youngstown has the power to issue bonds in such denominations and at a rate of interest not to exceed 6 per cent., payable semiannually, for the purpose of "erecting or purchasing waterworks or supplying water to the corporation or township and the inhabitants thereof" providing that, before any such bonds are issued or the tax levied for the payment of principal and interest of same, the question of issuing the bonds is first submitted to the voters of the municipal corporation, after due notice and advertisement as provided in the statute, and, "if two-thirds of the voters voting at such election upon the question of issuing the bonds vote in favor thereof, then, and not otherwise, the bonds shall be issued and the tax levied."

It appears from statements made during the argument of the case that a vote was had on the question of the issuance of these bonds by the voters of the city, but, either from want of proper notice or for some misunderstanding, the vote was not sufficient to authorize the issuance of the bonds; and it being apparent that more than the requisite number of voters prescribed by the statute desired this improvement, and that these bonds should issue, the city proceeded to secure the special act authorizing them to issue the same rather than submit to the delay and expense of a second election. Under this condition of affairs, the legislature of Ohio, on the 25th day of April, 1894, passed an act entitled "An act to authorize the city council of the city of Youngstown, Ohio, to issue bonds to extend and improve the water-works of said city, and to provide for the payment thereof." In view of what may hereafter be said with reference to this act, it may be well to incorporate it bodily in this opinion, as it is short:

"Section 1. Be it enacted by the general assembly of the state of Ohio, that the city council of the city of Youngstown be and the same is hereby authorized to issue the bonds of said city in the sum of not to exceed $186,000, for the purpose of raising money to improve and extend the water-works system of said city.

"Sec. 2. Said bonds shall be of such denomination and payable at such times, not to exceed 20 years from the date of the issue thereof, as the city council of said city shall determine, and shall not be sold for less than their par value. Such bonds shall have attached thereto interest coupons, and shall be signed by the mayor and clerk of said city, and attested by the seal thereof.

"Sec. 3. For the purpose of paying bonds and the interest thereon as the same may become due and payable, the said city council is hereby authorized and empowered to levy a tax on all taxable property of said city, in addition to that otherwise authorized by law, in such amount each year as shall be necessary to the payment of said bonds and interest.

"Sec. 4. This act shall take effect and be in force from and after its passage."

In order that we may intelligently and fairly construe this act, it may be well enough to state the reasons for the constitutional inhibition which prevented special acts conferring corporate powers on municipal corporations.

The supreme court of the state of Ohio, in the case of State v. City of Cincinnati, 20 Ohio St. 18, in discussing this constitutional provision, said:

"These provisions of the constitution are as imperative, as comprehensive, and emphatic as if the people, speaking through their constitution, had said 'this bane and curse of our legislation as it existed under the latitudinarian provisions of the constitution of 1802 is in the future utterly and absolutely prohibited; hence the laws conferring corporate powers shall be general, affecting, or liable to affect, the constituency of every individual member of the general assembly, and so, by powerful motives, calling his attention to the effect of the proposed enactments upon his own immediate constituency as well as upon the people of other localities.' "

Judge Ranney, in the case of Atkinson v. Railway Co., 15 Ohio St. 21, in referring to this same provision, said:

"These provisions of the constitution are too explicit to admit of the least doubt that they were intended to disable the general assembly from either creating corporations or conferring upon the same corporate powers by special acts of legislation. It was intended to correct an existing evil, and to inaugurate the policy of placing all corporations of the same kind upon perfect equality as to all future grants of power; of making such law applicable to all parts of the state, and thereby securing the vigilance and attention of its whole representation. * * * We must give such construction to the constitution as will preserve its leading objects intact."

We have in these judicial declarations of the highest court of the state the best evidence that the purpose of this constitutional inhibition was and is to make all acts conferring corporate power general, so that every member of the legislature may feel that the rights and interests of his constituency are involved in the measure, and therefore to secure from him his best judgment and his vote and influence upon the measure, as he deems it to be best for the interests of all the people concerned. I call attention particularly to this annunciation of the law by the supreme court of Ohio, because the contention is pressed with great earnestness that this special act does not confer corporate powers upon the city of Youngstown, but merely removes a restriction expressed in the general statute which permitted the issuance of these bonds only by the consent of two-thirds of the legal voters of the city. This restriction was a most important one. It was placed there for the purpose of protecting the taxpayers of the municipalities against a wild and reckless imposition of taxes by the bare action of their city councils. Surely, an act which seeks to remove this restriction ought to be an act which upon its face purported to be an act of general legislation, so that it might challenge the attention of all the members of the general assembly of the state of Ohio, which the makers of the constitution deemed so important and valuable. An act which sought to remove this restriction ought to be a general act, operative upon all municipalities, so as to make it free from the objection to special legislation so forcibly stated by Judge Ranney in the opinion from which a quotation has been made. But it is said in reply to this that there is no constitutional inhibition against special acts which do not confer corporate powers, and this act, it is contended, does not confer corporate powers. It seems to the court that this is a mere evasion of the force and meaning of the constitutional provision referred to. Under the general statutes cited, the city of Youngstown was without power or authority to issue these bonds, unless two-thirds of its voters, voting at an election to be held as provided for by said statute,

should vote in favor thereof. Any act which was framed to remove this restriction, with sole reference to its application to the city of Youngstown, was special in its intent and effect. An examination of this act shows conclusively that it was intended to confer in and by its own provisions upon the city council alone all the power and authority necessary to issue these bonds, without the consent of the voters, as required by the general laws. If it was intended solely to remove the restriction, it should have referred to the inhibition in section 2837, and provided that the city of Youngstown should have the power to issue said bonds without first complying with said special provision. But it sought to remove this restriction by securing an act which in and by its own provisions, independent of the general provisions of sections 2835–2837, conferred upon the city the corporate power to issue these bonds.

In State v. Mitchell, 31 Ohio St. 592, the court says: "The constitutionality of an act is to be determined by its operation." This special act operated to confer power upon the municipality to do that which, by general laws, it was without power to do. It will not do to say that the city acquired this power by the removal of a restriction in a general law, and not by corporate power conferred by a special act. I am of the opinion that the special act did confer corporate power upon the city of Youngstown, and it was so intended; and, being concededly special in its application, it is invalid. The bonds in this case have not been issued or sold, and the rights of purchasers are therefore not involved, and happily no loss accrues to bona fide holders for value.

Other questions have been argued, which I do not deem it necessary to discuss. The conclusion reached as to the invalidity of this act is decisive of the case, and makes any further statements unnecessary.

As to the question of damages, I think the only relief to which the complainant is entitled is a decree ordering the defendant to repay to it the $3,500, money deposited, and to pay the regular taxable costs of the case.