Ogle and Des Forges, Ex'rs *vs.* Reynolds and Boehme.

decision in which was based upon the construction of that Act.

*Decree affirmed.*

(Decided 17th December, 1891.)

·CHARLES OGLE and MARY JANE DES FORGES, Executors of HARRIET A. HAYDEN *vs.* PATRICK REYNOLDS and AUGUSTUS C. P. BOEHME.

·*Construction of Will—Ground-rents—Power of Sale under Will—Equity jurisdiction.*

A testatrix, a widow without children, bequeathed several ground-rents arising and payable out of certain lots to pay her funeral expenses and to erect monuments to her father and mother, and to her husband and herself. She disposed by her will of her entire property, real and personal. The entire rental of the lots amounted to only $86 a year. HELD:

That the testatrix meant that the reversion or fee which she owned in these lots should be sold, and the proceeds applied to the purposes mentioned.

Where a testator directs that his real estate shall be sold, and the proceeds of sale are to be disbursed or distributed by the executor for purposes which he alone can by law perform, he has an implied power to sell.

Where an executor under the provision of the Code that in all cases where executors are directed by will to sell real estate, they shall report the sale to the Orphans' Court for ratification, reports such sale, the Court has jurisdiction to determine whether the will in question confers the power to make the sale; but such jurisdiction is not exclusive, as the executor may, in his discretion, apply to a Court of equity to administer his trust.

APPEAL from the Orphans' Court of Baltimore City.

On the 14th of May, 1891, Charles Ogle and Mary J. Des Forges, executors of Harriet A. Hayden, deceased, offered at public auction the reversions in and the rents issuing out of certain lots of ground, on the west side of Eutaw street, in Baltimore City. Two of these ground-rents were purchased by the appellee, Patrick Reynolds, and the third was purchased by the appellee, Augustus C. F. Boehme. The executors reported the sales to the Orphans' Court for ratification, claiming they had been made in pursuance of a power vested in them by the fourth clause of the will of the testatrix. The purchasers respectively excepted to the ratification, alleging that the will did not confer on the executors authority to sell the property, and that they were unable to give a market-able title thereto. The Court sustained these exceptions, and the executors took this appeal.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, FOWLER, and MCSHERRY, J.

*M. Sonnehill,* for the appellants.

It has been settled law since the Year Books, that where a general direction is given by will to sell land, and it is not stated by whom the sale is to be made, if the proceeds of sale are to be applied by the executors in the execution of their office, a power to sell will be implied in the executors. *Sugden on Powers (Eng. Ed.),* pgs. 115, 118, 120 *and* 121, *ch.* 4, *sec.* 1, *parts* 41–50, 57–60; *Peter vs. Beverly,* 10 *Peters,* 565; *Magruder vs. Peter,* 11 *G. & J.,* 226; *Jackson vs. Ferris,* 15 *Johnson,* 346; *Tylden vs. Hyde,* 2 *Sim. & Stu.,* 238; *Taylor vs. Benham,* 5 *How.,* (*U. S.*) 266; *Bogert vs. Hertell,* 4 *Hill,* 500; 1 *Williams on Executors, star p.* 655 (*top p.* 726.)

The power to sell may likewise be given by implica-tion, and no particular words are necessary to create

such a power, if the intention appears, or if certain duties necessitating a sale are to be performed, it is sufficient. *Robinson vs Lowater,* 5 *De G., M. & G.,* 472; *Sugden on Powers, p.* 102; *Eidsforth vs. Armstead,* 2 *Kay & J.,* 333; *Greetham vs. Colton,* 34 *Beav.,* 615; 2 *Story's Eq. Juris., sec.* 1060.

In the case at bar there is an express charge that the specific property shall be used for the special purpose, and there is no other disposition made of the same property. It was clearly the wish and intention of the testator that the specific property, which has been sold, should be sold to be used for the purpose stated in the will. Courts, in carrying out the wishes of a testator, which is the pole-star in the construction of wills, are much inclined to vest all the powers or interests in executors, which are necessary to effectuate those wishes. *Taylor vs. Benham,* 5 *How., U. S.,* 268.

Courts of justice will be astute in discovering the real intention of the testator and the means by which that intention is to be carried into effect. *Chelton vs. Henderson,* 9 *Gill,* 437.

Another fixed rule in the construction of wills, is not to require a testator to make disposition of or confer authority in any form of words, but to gather the intention from the words used. *Going vs. Emery,* 16 *Pick.,* 113. *See Tayloe vs. Mosher,* 29 *Md.,* 451; 3 *Jarman on Wills, (Amer. Ed.), top p.* 436.

*James McColgan,* for the appellee, Reynolds.

The following authorities were cited: *Sections* 256, 282 *of Article* 93 *of the Code; Bentham vs. Wiltshire,* 4 *Maddocks,* 44-49; *Seegers, Ex'rs vs. Seeger,* 21 *N. J. Eq.,* 90; *In the matter of Will of Fox,* 52 *N. Y.* 530-536, 537; *Ridgely vs. Bond,* 18 *Md.,* 448; *Rea vs. Twilley,* 35 *Md.,* 411-412.

*C. D. Barnitz*, for the appellee, Boehme.

Reference was had to the following authorities: *Creswell vs. Lawson*, 7 *G. & John.; Ridgely vs. Bond*, 18 *Md.*, 434; *Saylor vs. Plaine*, 31 *Md.*, 159; *Taylor vs. Bruscup*, 27 *Md.*, 226; *Code, Art.* 93, *secs.* 256, 282; *State, use of Trustees, &c. vs. Warren, et al.*, 28 *Md.*, 338; *Eichelberger, Ex'r vs. Hawthorne*, 33 *Md.*, 595; *Schull vs. Murray*, 32 *Md.*, 16; *Ramsey vs. Welby*, 63 *Md.*, 584–6.

ROBINSON, J., delivered the opinion of the Court.

The fourth clause of the will of the testatrix, out of which this controversy arises, is as follows:

"Fourthly. I will, devise, and bequeath my four several ground-rents arising and payable out of the lots on the west side of North Eutaw street as follows, that is to say:

"First. The one at the corner of Eutaw and Biddle streets, to pay my funeral expenses, and a tomb for Captain Hayden and myself.

"Second. The next, or second ground-rent, to be used to buy and put up a tomb for my father and mother Ogle, and James and Elizabeth Hayden.

"Third. The next, or third ground-rent, is to be used for the same purposes as herein in this last clause mentioned, if the other two ground-rents should prove insufficient for the purpose."

The fourth ground-rent she devises to the building fund of Saint Luke's Mission of the Protestant Episcopal Church, and about which there is no controversy.

Under this clause, the executors named in the will, sold the *reversionary* interest of the testatrix in the three lots of ground out of which the rents issued, the total amount of sales being $1900. The sales were reported by them to the Orphans' Court, to the ratification of which exceptions were filed by the purchasers. The questions arising upon these exceptions are: First,

Ogle and Des Forges, Ex'rs *vs.* Reynolds and Boehme.

did the testatrix mean that the *reversionary interest* in these lots should be sold, and the proceeds arising from the sale to be applied to the purposes mentioned in this clause, or did she mean that the *annual rents themselves* should be so applied? And, secondly, if the reversionary interest was to be sold, did she mean that the executors should make the sale? The answer to these questions depends upon the intention of the testatrix, and this intention is to be ascertained from the construction of the clause itself, taken in connection with the other clauses in the will, and the circumstances under which the will was made. The testatrix was a widow without any children, and was at the time of her death seized and possessed of valuable real and personal property. In the first clause she directs her executors to sell her house and lot on Pennsylvania avenue, and to distribute the proceeds of sale among certain nephews and nieces therein named. In the second, she directs her executors to sell her leasehold property, No. 87 Greene street, and to distribute the proceeds between her three brothers and sisters. In the third she directs her executors to sell her interest in the country place known as "The Widerhers," and the proceeds of sale she bequeaths to her brothers and sisters for life, and upon their death to their children. The fourth is the one out of which this litigation has arisen. In the fifth and sixth clauses she gives all her furniture and clothing and personal effects to her three sisters, with the exception of her gold watch, which she gives to her nephew John Frances Hayden. She then appoints her brother Charles Ogle and her sister Mary Jane Des Forges, executors. She thus disposes of her entire property, real and personal, including her clothing; and it is clear beyond question that she did not mean to die *intestate* as to any portion of her property. And yet, if the contention of the appellees be sound, if she meant that the *annual rents*

*issuing* out of these several lots of ground should be applied to the purposes specified in the fourth clause, there would be an *intestacy* as to the residuary interest in these lots, and this we cannot for a moment suppose she intended. Primarily "ground-rents" mean, it is true, the rent payable to the lessor, but at the same time it must be conceded, that the *reversionary interest* in the lots thus leased is generally designated and known as "ground-rents." And, as used in the will before us, it is clear the testatrix meant that this *reversionary* interest which belonged to her, should be sold, and the proceeds applied to the purposes mentioned in the will, and did not and could not have meant the rents issuing out of the lots. The entire rental of these lots amounted to eighty-six dollars only, a sum altogether insufficient to pay the funeral expenses, to say nothing of the expenses to be incurred for "the tombs" as she terms them, and which she directs to be placed over the graves of her parents and of her husband and herself. These expenses she left largely to the judgment and discretion of her executors, not to exceed however, the sum realized from the sale of these lots. This is the limitation which she herself fixes upon the amount to be expended for these purposes.

Being of opinion, then, that the testatrix meant that the *reversion or fee,* which she owned in these lots should be sold, the question is whether the power to sell was given to the executors. And in regard to this, there cannot be, it seems to us, any difficulty. We take it to be well settled, that where a testator directs that his real estate shall be sold, and the proceeds of sale are to be disbursed or distributed by the executors, the power to sell is an implication of law. This was decided in *Magruder vs. Peter,* 11 *G. & J.,* 226, and so decided by the Supreme Court in *Peter vs. Beverly,* 10 *Peters,* 565; and by Chancellor KENT in *Davoue vs. Fanning,* 2 *Johns.*

Ogle and Des Forges, Ex'rs *vs.* Reynolds and Boehme.

*Chancery*, 252. It is also the well settled law in England. In the late case of *Doe vs. Hughes*, 6 *Exchequer*, 223, PARKE, Baron, said, "If from the whole purview of the will it appears to have been the intention of the testator that his real estate should be sold, and the proceeds are to be distributed for purposes which the executors alone could by law perform, then there is an implied power given them to sell the estate." Here the testatrix directs that these ground-rents shall be sold, and the proceeds of sale are to be applied to the payment of her funeral expenses and the expenses necessary to the erection of monuments or tombs in memory of her father and mother, and of her husband and herself— expenses to be defrayed by the executors and by them alone. And, this being so, they have, by necessary implication of law, the power to make the sale.

Nor can we agree with the appellees that the executors ought, much less were they obliged, to file a bill in equity for the purpose of having this will construed, and for the purpose of having the power to sell exercised under the direction of a Court of equity. The Code provides that in all cases where executors are directed by will to sell real estate, they shall report the sale to the Orphans' Court for ratification, and, in passing upon the question of ratification that Court has the jurisdiction to decide whether the will in question confers upon the executor the power to make the sale. This jurisdiction is not, however, an exclusive jurisdiction, and an executor may, if he thinks best, file a bill in equity and administer his trust in a Court of equity. This, however, he is not obliged to do. For these reasons the exceptions filed to the ratification of the sales made by the executors in this case must be overruled.

*Order reversed, and*
*cause remanded.*

(Decided 17th December, 1891.)