# CAMP v. BOYD.

EQUITY; INJUNCTION; EJECTMENT; "GROUND RENTS;" LEASES; JUDICIAL SALES.

1. A bill in equity to enjoin the prosecution of an action of ejectment cannot be defeated on the ground that the complainant has an adequate remedy at law, where the prayers for relief are in the alternative, and the granting of one of them would require the intervention of a court of equity to afford relief, such as the passage of a decree directing the renewal, after its expiration, of a 99-year lease renewable forever.

2. Where a court of equity has jurisdiction to enjoin the prosecution of an action of ejectment involving three tracts of land, so far as two of the tracts are concerned, on the ground that the defendants in the action have no adequate remedy at law as to the two tracts, it will assume jurisdiction as to the other tract, although as to that the defendants would have such a remedy, in order to dispose of the whole case and thus end the litigation.

3. The term "ground rents" has, since colonial times, possessed in Maryland a peculiar and comprehensive meaning, which ought to be followed in the determination here of a suit involving the meaning of the expression as used in a conveyance of land which, shortly prior to the conveyance, was part of that State, upon the ground that the expression was used in the conveyance with reference to its then significance.

4. Where the old circuit court of this District, in a judgment creditors' suit, directed by its decree the sale of the "ground rents" of the judgment debtor in partial satisfaction of a judgment against him, and it appeared that at the time of the decree there were outstanding ninety-nine-year leases made by him, renewable forever, and which contained covenants requiring the lessees to improve the demised premises by erecting buildings thereon, which leases were subject to a deed of trust made by the lessor to secure prizes in a lottery, one of which the judgment creditor drew, and for the amount of which he obtained his judgment, it was *held* that the decree extinguished the interest of the lessor in the reversion, as well as in the leasehold, and that the purchasers at a sale under the decree took

his entire title, and not merely his right to receive rents during the term of the lease.

No. 1999.  Submitted February 2, 1910.  Decided May 10, 1910.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia enjoining him from the further prosecution of an action of ejectment.

*Affirmed.*

The COURT in the opinion. stated the facts as follows:·

This is an appeal from a decree of the supreme court of the District of Columbia enjoining appellant, Joseph Parker Camp, from the further prosecution of an action of ejectment involving the title to original lot No. 20 in square No. 254 in the city of Washington, instituted by him against the late ·Caleb C. Willard, under whose last will appellees, Kate Willard Boyd, Henry K. Willard, and George E. Howe, devisees in trust under the last will of Caleb C. Willard, deceased, were named as trustees, and in that capacity herein appear.

Said lot was sold by the United States commissioners to Samuel Blodgett, Jr., but no conveyance was made to him; hence he acquired only an equitable fee-simple interest.  By a deed of trust dated January 28th, 1794, duly recorded, Blodgett conveyed said lot to Thomas Johnson, Jr., and Thomas Peter in trust to secure said United States commissioners from loss by reason of any default in the payment of prizes which might be drawn in a lottery then being conducted by said Blodgett, and called the "Hotel Lottery."  Subsequently, while said deed of trust was still in force, he demised this lot by the execution of three leases, each for a term of ninety-nine years, renewable forever, as follows:  "On April 13th, 1801, the east 20 feet fronting on F Street to James Daugherty.  On April 14th, 1801, the west 19 feet, 11½ inches, to Edward Frethey, and on April 28th, 1804, the middle 11 feet, 11 inches to Edward Fennell.  In the Daugherty and Frethey leases an annual rental free of all taxes, etc., of $40 was stipulated, while the Fennell

lease provided for an annual rental of $24. The Daugherty and Frethey leases contained a condition that upon payment by the lessee, his heirs or assigns, at any time or times during the continuance of that or any future demise, of the sum of $500 the grantor, his heirs or assigns, would execute a deed in fee simple of the demised premises to the lessee or his heirs or assigns. It was further agreed that any sum not less than one tenth of said $500 might be paid at any time, and that so much in proportion of the rent should be lessened. In both the Daugherty and Frethey leases the lessee covenanted to "erect and build a good and substantial dwelling house" on the demised premises, to be completed and tenanted during the course of the year. In the Fennell lease the lessee was entitled to a deed in fee simple upon the payment of $300.

On October 9th, 1802, Robert S. Bickley instituted an equity suit in the then circuit court of the District of Columbia against Blodgett, Thomas Peter, surviving trustee under said deed of trust, Thomas Monroe, superintendent and agent of the affairs of the District of Columbia, and others, praying that the property of said Blodgett in the District of Columbia be sold to satisfy a judgment for the sum of $21,500 and costs, which Bickley had obtained in Pennsylvania, in a suit based upon the default of Blodgett in the payment of the prize to which Bickley was entitled as the holder of a ticket in said Hotel Lottery. This suit resulted in a decree dated October 4th, 1805, directing the payment of said judgment on or before a day certain, and that in default thereof the property of said Blodgett described in said decree, and including certain squares and lots, should be sold. It was further ordered and decreed that "certain ground rents reserved by the said defendant Blodgett by indenture made between the said Samuel Blodgett of the one part and Edward Frethey, one of the defendants aforesaid, of the other part, bearing date on the 4th day of April, 1801, and certain other ground rents reserved by the said Samuel Blodgett by indenture made between the said Samuel Blodgett of the one part and James Daugherty, one of the said defendants, of the other part, bearing date on the 13th day of April, 1801,

be also sold for the purposes aforesaid." Blodgett failed to comply with the order of payment, and the trustee named in said decree advertised and sold all of said squares and lots; "also several certain ground rents reserved by said Blodgett." The ground rent reserved under the Daugherty lease was sold to one Henry Pratt for $360, and the ground rent under the Edward Frethey lease was sold to Robert Howe for $400. The deed in each instance conveyed all the right, title, and interest of said Blodgett in said ground rents.

The proceeds of the sale under said decree of October 4th, 1805, failed to liquidate the judgment, and on May 28th, 1810, Bickley filed a supplemental bill praying the sale of certain other property, "lately discovered," in satisfaction of said judgment. In this supplemental bill was included the ground rents reserved in the Fennell lease, "and the reversionary interest of said Blodgett therein, whatsoever the same may be." The decree directed the sale of "all interests, claim, and right of said Blodgett of, in, and to said property." A different solicitor appeared for the petitioner in the prosecution of this supplemental bill. It is not disputed that the sale of the Fennell ground rent conveyed to the grantee whatever interest Blodgett had in the land covered thereby.

The purchaser of the Daugherty ground rent assigned his interest to said Bickley, to whom the trustee conveyed "all the right, title, and interest" of said Blodgett in said ground rent, along with the other property, by deed dated April 3d, 1807, Thomas Peter, surviving trustee under the Blodgett deed of trust, and Thomas Monroe, superintendent, etc., joining in the conveyance. Bickley, on May 1st, 1813, for a consideration of $400, conveyed said east 20 feet in fee simple to James Daugherty. The granting clause contains the following: "All that part of lot number 20, in square number 254, in the city of Washington, fronting on F Street north, 20 feet, which said part of a lot and premises was heretofore, to wit on or about the 13th day of April in the year 1801, leased on the conditions herein mentioned, by a certain Samuel Blodgett to the said James Daugherty, and all the estate, interest, and claim

of the said Samuel Blodgett in and to the said part of a lot and premises, was afterwards sold and conveyed by Daniel C. Brent as trustee, under a decree of the said circuit court of the District of Columbia for the county of Washington, to the said Robert S. Bickley, which will fully appear, reference being had to the land records of the county of Washington, in the District of Columbia, together with the rights, privileges, and appurtenances thereto belonging or in anywise appertaining." It thus appears that Daugherty, the leaseholder, became the owner of the ground rent.

On January 15th, 1807, Brent and Peter conveyed to Robert F. Howe, the purchaser at said trustee's sale, "all the right, title, and interest of, in, and to the said ground rent reserved by the said Samuel Blodgett by indenture made between him and the said Edward Frethey." On July 18th, 1835, the leasehold and ground rent interests became merged.

By mesne conveyances the title conveyed under said decrees, together with the leasehold interests, became vested in one Benjamin F. Isherwood, who, on May 4th, 1882, conveyed all of said lot in fee simple to Caleb C. Willard, complainant's testator.

The appellant, Camp, claims title to said lots by grant, from the heirs of Blodgett, of their supposed reversionary interest in said lot.

The prayers for relief are in the alternative. "If the court shall be of the opinion that, under the mesne conveyances and proceedings hereinbefore set forth, the complainants have derived and are now vested with all the right, title, and interest which the said Samuel Blodgett had to the lot in question," the court will grant a writ of injunction enjoining said defendant from the further prosecution of said ejectment cause. If, on the other hand, the court "should be of the opinion that the complainants did not derive under said mesne conveyances and proceedings hereinbefore set forth, and are not now possessed through the same, of all the right, title, and interest to the estate which the said Blodgett owned in said lot, and should further be of the opinion that the defendant is vested with the

reversion in fee as assignee of the heirs of the said Blodgett, then that the court will decree that the said defendant renew the said leases to the complainants for a period of ninty-nine years, renewable forever," etc.

To the bill of complaint the defendant filed a demurrer, contending therein that the bill does not set forth such a case as entitles complainants to the relief sought, that complainants have a complete remedy at law, and that the court is without jurisdiction in the premises.

Mr. *William E. Ambrose* for the appellant.

Mr. *William F. Mattingly*, Mr. *R. Ross Perry*, Mr. *R. Ross Perry, Jr.*, and Mr. *John B. Larner* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

First, appellant here insists that no case is presented "which calls for the intervention of an equity court." To sustain this contention it must appear that appellees have a full and complete remedy at law. As to the Daugherty and Frethey leases, under one view of the case it will be readily seen that complainants would be without adequate remedy in a court of law. If the first proposition contended for by complainants should be sustained, namely, that the sale of the Daugherty and Frethey ground rents extinguished all of Blodgett's interest in the parcels of land covered thereby, complainants' remedy in a court of law would probably be adequate. If, on the other hand, it should be held that such sale did not extinguish Blodgett's reversionary interest in said parcels, it is apparent, the ninety-nine-year terms having ended without renewal, that it would require the intervention of a court of equity to afford relief. *Banks* v. *Haskie,* 45 Md. 207; *Kilbourn* v. *Sunderland,* 130 U. S. 514, 32 L. ed. 1008, 9 Sup. Ct. Rep. 594. As to the Fennell tract, while the remedy at law would appear to be adequate, there is no apparent reason why a court of equity, having assumed jurisdiction as to the other two tracts men-

tioned in defendant's action of ejectment, all three tracts having been included in said action, should not dispose of the whole case and thus end the litigation.

Coming to the merits of the case, the interesting question is presented as to the meaning of the term "ground rents" as employed in said decree and the conveyances by the trustee thereunder, it being contended on the one hand that "ground rents," as thus employed, conveyed to the grantees Blodgett's right in perpetuity to receive rent under said leases, and hence that such conveyances really extinguished all of Blodgett's interest in said parcels of land, and, on the other hand, that all that was sold and conveyed was Blodgett's right to receive rents during the ninety-nine-year terms, and that the privilege of renewal not having been exercised within those terms, Camp, as the grantee of the heirs of Blodgett, is entitled to possession.

Leases of this character were very common in Maryland in colonial times. We therefore, in the absence of authority in our own jurisdiction, resort to the adjudged cases in that jurisdiction in our effort to find a solution of the question in issue. In *Banks* v. *Haskie,* supra, the question was whether the owner of the leasehold interest, not having exercised the right of renewal within the ninety-nine years, was entitled, as against the owner of the fee, to enforce specific execution of the renewal covenant. Decree for complainant. The court found that the intention of the lessor in the execution of such a conveyance was to secure prompt payment in perpetuity of the interest on a sum of money equal to the value of the property in fee at the time of the execution of the lease, and that the intention of the lessee was to acquire a perpetual interest in the premises which would justify him in making improvements on the property, and treating it in other respects as his own. In that lease, as in the Daugherty and Frethey leases, there was a covenant requiring the lessee to improve the premises by erecting a building thereon. This the court found to be evidence of the permanent character of the tenure. After stating that courts should so treat and construe such a lease as most effectually to carry out the intent of the parties, the court said: "This character

of tenure is, so far as we know, among the States, peculiar to Maryland. It has not been generally adopted, so far as we are informed, in any other State. It was introduced here in colonial times, and has been a favorite system of tenure from a very early period. A large city has been built, and improved, and a vast majority of the real estate in Baltimore is now held under it. It is not open to any of the objections against perpetuities. Property is not thereby placed *extra commercium.* On the contrary, these leasehold interests devolve upon the personal representatives of the owner, are in terms made assignable, and they, as well as the ownerships in fee under the denomination of 'ground rents' are subjects of daily transfer, and are constantly sought for as safe investments of capital. It is a peculiar description of tenure which has been sustained by our courts, and approved and fostered by our people. While the ground rents from their nature are usually of a fixed value, the leasehold interests are more or less fluctuating."

In *Ogle* v. *Reynolds,* 75 Md. 145, 23 Atl. 137, the testatrix bequeathed "four several ground rents," payable out of a certain lot, to defray her funeral expenses and to erect monuments to her parents, her husband, and herself. All her other property, both real and personal, passed under her will. The court ruled that the reversion or fee passed under the will, and in the course of the opinion said: "Primarily, 'ground rents' mean, it is true, the rent payable to the lessor, but at the same time it must be conceded that the *reversionary interest* in the lots thus leased is generally designated and known as 'ground rents.' "

*Jones* v. *Rose,* 96 Md. 483, 54 Atl. 69, is the latest decision of the Maryland court of appeals upon this subject. In that case the owner of land which was subject to an old ground rent joined in a deed of partition charging the rent upon one part, and exonerating the remainder of the land therefrom. Subsequently one of the parties to this deed acquired the outstanding ground rent, and conveyed the same to certain of the other parties to the deed of partition. These grantees thereupon executed a deed conveying the rent to the owners of the lot upon

which it had been charged in said deed of partition. Thereafter the owner of one of the lots which had been exonerated from the rent, not having received a grant of the reversion, sold said lot as fee simple. The purchaser objected to taking the title as being technically leasehold, whereupon the vendor filed a bill specifically to enforce the contract. It was held that the parties to the deed of partition and those claiming under them were estopped to deny that the rent had been apportioned, and that, since the same parties afterwards acquired the ground rent, they and their privies were likewise estopped to claim that the rent was collectible from that part of the land which had been exonerated therefrom; and that, moreover, the execution of the deed conveying the ground rent extinguished the rent. In closing its opinion the court said: "All the property, except lots 19, 20, and 21, had already been exonerated from the burden of the ground rent by virtue of the estoppel above adverted to, and therefore it became necessary only to release the owner of these three lots, if the rent was intended to be wholly extinguished. When the owner of those lots was released by the deed of 1857, the original rent was completely destroyed, and lot No. 4 was then, if not before, held in fee." In that case, it will be observed, the court found the title to the lot which had been exonerated from the rent to be in fee simple, notwithstanding that the naked reversion had never become vested in the holder of the title. In other words, it sustained the proposition that the extinguishment of the ground rent likewise destroys the reversion, if, of course, such intent is manifest from the surrounding circumstances.

It is apparent from an examination of the preceding cases that the term "ground rents" in Maryland has, since colonial times, possessed a peculiar and comprehensive significance. This fact ought to be controlling in this case, because the property affected by this decision was, just prior to the conveyance of the "ground rents" herein involved, a part of the State of Maryland, and said demises were undoubtedly made with reference to the then signification of the above term. In the light of these observations let us briefly review the conditions exist-

ing when the sale of the Frethey and Daugherty ground rents took place. Blodgett, as the holder of the equitable fee-simple title, had conveyed the lot composing the Frethey, Fennell, and Daugherty parcels by deed in trust for the express purpose of securing the United States commissioners from loss by reason of said Hotel Lottery. In apparent conflict with this deed of trust, he executed the three leases to Frethey, Fennell, and Daugherty, respectively. A default occurred in the payment of a prize to which Bickley was entitled as the holder of a successful ticket in said lottery, and Blodgett's property, or so much of it as could then be found, was sold to satisfy the judgment obtained by Bickley. It is manifest that the court had jurisdiction to decree a sale of all of Blodgett's interest in the two parcels involved in the first sale. Is it to be presumed that the court, having jurisdiction to decree the sale of all of Blodgett's interest in said parcels, decreed the sale of only a part of said interest, notwithstanding that there still remained a substantial amount due from Blodgett to Bickley? Is it not more reasonable to assume that the court, in decreeing the sale of these "ground rents," intended to encompass the sale of Blodgett's entire interest in the parcels? In other words, are we not justified in the assumption that the court was cognizant of the significance of the term "ground rents" in this jurisdiction, and, in using the term, intended to extinguish Blodgett's entire interest in the Daugherty and Frethey parcels? To be sure, when the supplemental bill was filed, the reversionary interest of Blodgett in the Fennell parcel was expressly mentioned, but this addition is probably to be attributed to the caution of the solicitor who prepared that bill. The court in its decree was dealing with leases renewable forever. Such leases in Maryland have been regarded as being practically in perpetuity. *Banks* v. *Haskie,* 45 Md. 207. Is it strange, therefore, that in a jurisdiction where so many leases of this character existed, the term "ground rents" should have come to include, in cases where the surrounding circumstances indicated such an intent, the reversion? No effort was made to disturb either Daugherty or Frethey in the possession and enjoyment

of their leasehold interests.   Neither did the court decree an assignment of the leases by Blodgett to the purchasers under the trustee's sale.   It apparently intended to do more than that, and used the term "ground rents" in its accepted signification, for the purpose of extinguishing Blodgett's interest.

We therefore agree with the learned trial justice that the extinguishment of the ground rents exhausted the rights of the reversioner, and that, when the ground rents and the leasehold interests became merged, the merger carried with it the fee.   We more readily adopt the reasoning and conclusion of the Maryland authorities on this question because of the extreme technicality of appellant's contention.   When these rents were sold and conveyed, it was undoubtedly intended to lay hold of and extinguish all of Blodgett's interest in the property mentioned.   Appellant's claim is therefore based upon an alleged omission, rather than upon any just or equitable foundation.

The decree is affirmed, with costs.                *Affirmed.*

On application of the appellant an appeal to the Supreme Court of the United States was allowed May 13, 1910.